543 F.2d 703
 HAZELWOOD CHRONIC & CONVALESCENT HOSPITAL, INC., dba Kearney
Street Convalescent Center, Plaintiff-Appellee,
v.
Caspar WEINBERGER, Secretary of Health, Education, and
Welfare, et al., Defendants-Appellants.
 No. 74-2210.
 United States Court of Appeals,
Ninth Circuit.
 Sept. 23, 1976.
 
 David M. Cohen, Atty. (argued), Dept. of Justice, Washington, D.C., for defendants-appellants.
 Michael J. Gentry (argued), Portland, Or., for plaintiff-appellee.
 Before WALLACE and KENNEDY, Circuit Judges, and FERGUSON,* District Judge.
 ANTHONY M. KENNEDY, Circuit Judge:
 
 
 1
 In this case we consider the effect of 42 U.S.C. § 405(h) in precluding district court jurisdiction to review a decision of the Secretary of Health, Education, and Welfare regarding payments to a hospital under the Health Insurance for the Aged (Medicare) Act. The district court held that the Secretary's regulation for recapture of accelerated depreciation charges, 20 C.F.R. § 405.415(a)(3) (1975), was unconstitutional as applied retroactively to the plaintiff. We hold that the district court had jurisdiction to review the Secretary's action, but reverse on the merits.
 
 I. FACTS
 
 2
 Under the Medicare Act, hospitals and similar institutions are reimbursed for providing services to eligible patients. Such "providers of services" are paid for their "reasonable costs," as defined in the statute and subject to regulations adopted by the Secretary. 42 U.S.C. § 1395x(v) (1970), as amended (Supp. IV, 1974).[1]
 
 
 3
 In 1967, Hazelwood Hospital began providing services under the Medicare program. The regulations then in effect allowed depreciation charges as an item of reasonable cost and provided that such charges could be computed by either a straight-line or an accelerated method.
 
 
 4
 On February 8, 1970, the Secretary announced a new regulation on depreciation. 35 Fed.Reg. 2593, codified at 20 C.F.R. § 405.415(d)(3) (1975). Effective August 1970, new providers were no longer allowed to claim accelerated depreciation. Old providers who remained in the Medicare program could continue to use the accelerated depreciation method. Upon a provider's withdrawal from the program, however, the Secretary could recapture prior payments to the extent they were attributable to accelerated depreciation costs in excess of what would have been allowed under the straight-line method.[2]
 
 
 5
 In December 1971, Hazelwood voluntarily withdrew from the Medicare program. Its excess costs attributable to accelerated depreciation were $18,054 from 1967 through 1970, and $6,624 in 1970-71. Hazelwood rejoined the Medicare program in July 1972, and its subsequent reimbursements were reduced by a total of $24,678 to recapture the excess depreciation.
 
 
 6
 Hazelwood brought this suit in the district court, alleging federal question jurisdiction and claiming that 20 C.F.R. § 405.415(d)(3) could not be applied retroactively to recapture depreciation charges claimed for the years preceding its promulgation. The district court held that such application violated the due process clause of the fifth amendment. It enjoined the Secretary from applying the regulation to recapture depreciation costs claimed by Hazelwood prior to January 1, 1970, and awarded Hazelwood a judgment for $18,054.
 
 II. JURISDICTION
 
 7
 A. The Medicare Statute and 28 U.S.C. § 1331
 
 
 8
 The Medicare Act authorizes an individual beneficiary to obtain an administrative hearing and judicial review of a final decision, regarding either his eligibility or amount of benefits. 42 U.S.C. § 1395ff(b) (1970), incorporating 42 U.S.C. § 405(b), (g), as amended, (Supp. IV, 1974). At the time this action arose, however, a provider of services (such as Hazelwood Hospital) was authorized to obtain review only of eligibility determinations. 42 U.S.C. § 1395ff(c) (1970). No provision was made for review of the level of payments allowed to an institution under the "reasonable cost" standard.[3]
 
 
 9
 The Medicare Act is not unusual in providing specifically for judicial review of some but not all of the agency's decisions. In such cases the specific review provision is normally held to be the exclusive means of obtaining judicial review of the decisions for which it is available. The mere existence of such a mechanism for some matters, however, does not itself provide clear evidence of a congressional intent to preclude judicial review of the matters not covered. Thus such questions are normally subject to "non-statutory" review by a court having jurisdiction of the matter under one of the general provisions of title 28. See Note, Jurisdiction to Review Federal Administrative Action: District Court or Court of Appeals, 88 Harv.L.Rev. 980, 981-84 (1975).
 
 
 10
 The claim presented in this case is clearly not one for which the Medicare Act specifically authorizes judicial review. However, the plaintiff alleged and the district court presumably found federal question jurisdiction, 28 U.S.C. § 1331. While such jurisdiction would ordinarily be available for a question not reviewable under the special statutory procedure, the Medicare Act has incorporated the following additional provision of the Social Security Act:
 
 
 11
 The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under (28 U.S.C. § 1331, inter alia ) to recover on any claim arising under this subchapter.
 
 
 12
 42 U.S.C. § 405(h), incorporated under 42 U.S.C. § 1395ii. In Weinberger v. Salfi, 422 U.S. 749, 761, 95 S.Ct. 2457, 2464, 45 L.Ed.2d 522 (1975), the Court held that "the third sentence of § 405(h) precludes resort to federal question jurisdiction" for a constitutional challenge to a denial of benefits under the Social Security Act. We conclude that this same language, incorporated into the Medicare Act, similarly precludes federal question jurisdiction in the instant case.
 
 
 13
 However, this conclusion does not end our inquiry. It is appropriate to consider other possible bases for jurisdiction, even though not pleaded by the plaintiff or relied upon by the district court. Smith v. United States, 502 F.2d 512, 519-20 (5th Cir. 1974); Zimmerman v. United States, 422 F.2d 326, 330 (3d Cir.), cert. denied, 399 U.S. 911, 90 S.Ct. 2200, 26 L.Ed.2d 565 (1970); see Williams v. United States, 405 F.2d 951 (9th Cir. 1969).
 
 B. The Administrative Procedure Act
 
 14
 We have previously held that the judicial review provisions of the APA, 5 U.S.C. §§ 701-06, confer subject matter jurisdiction for district court review of reasonable cost determinations by the Secretary under the Medicare Act, 42 U.S.C. § 1395x(v). Rothman v. Hospital Service, 510 F.2d 956, 958-59 (9th Cir. 1975).[4] Thus we are bound to find jurisdiction in the present case unless our holding in Rothman is affected by the Supreme Court's decision in Weinberger v. Salfi, supra.
 
 
 15
 The Salfi Court primarily construed the third sentence of section 405(h), which mentions only certain jurisdictional grants in title 28 and thus does not expressly include the APA, which is located in title 5.[5] At least three circuits have thus treated Salfi as irrelevant to the question of APA jurisdiction, interpreting its holding as limited to the effect of section 405(h) in precluding federal question jurisdiction. Hunt v. Weinberger, 527 F.2d 544, 546-47 (6th Cir. 1975); Lejeune v. Mathews, 526 F.2d 950, 952-53 & n.2 (5th Cir. 1976); Sanders v. Weinberger, 522 F.2d 1167, 1171 (7th Cir. 1975).
 
 
 16
 However, we do not think this a proper basis for distinguishing the Court's decision. The plaintiffs in Salfi (unlike the instant plaintiff) expressly alleged jurisdiction under the APA. Appendix at 7, Weinberger v. Salfi, supra; see Brief for Appellees at 42-43. And, in ordering dismissal on the class of unnamed plaintiffs who had not complied with the jurisdictional prerequisites of section 405(g), the Court held that "(o)ther sources of jurisdiction (are) foreclosed by § 405(h)." 422 U.S. at 764, 95 S.Ct. at 2466. Thus the Court must have regarded APA jurisdiction as either precluded by section 405(h)[6] or unavailable for some other reason.[7]
 
 
 17
 There is, however, a well supported and important distinction between Salfi and the instant case. There the Social Security Act authorized district court review of all final decisions of the Secretary under the procedures specified in section 405(g). Thus judicial review was potentially available to the class of unnamed plaintiffs, and the Court's holding did not have the effect of totally precluding judicial review of the sort of claim they raised. Additionally, the Court qualified its holding in a respect that is important in distinguishing this case. The Court noted that where a constitutional claim is presented, statutes are not likely to be interpreted to preclude judicial review altogether. 422 U.S. at 762-63, 95 S.Ct. 2457.
 
 
 18
 In contrast to the Social Security Act interpreted in Salfi, the Medicare Act (prior to 1972) did not authorize judicial review of provider payment claims. Then, interpreting section 405(h) to preclude all review outside of the Act, would foreclose any judicial inquiry even in cases containing significant constitutional questions, such as the hospital's claim in this case. Under these circumstances, we conclude that Salfi does not control the present case and follow our decision in Rothman. Thus we regard the district court as having jurisdiction by virtue of the judicial review provisions of the APA.
 
 III. STATUTORY AUTHORITY
 
 19
 The district court made no express ruling on the plaintiff's contention that the Secretary lacked statutory authority to promulgate the regulation here in question. We assume, however, that it would not have reached the constitutional issues in this case if the regulation could have been invalidated on a statutory basis. See Ashwander v. TVA, 297 U.S. 288, 348, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). We agree with the implicit holding of the district court that the regulation was a valid exercise of the authority delegated the Secretary under the Act.
 
 
 20
 42 U.S.C. § 1395hh authorizes the Secretary to promulgate necessary regulations, and 42 U.S.C. § 1395x(v)(1)(A) specifically authorizes regulations "establishing the method or methods to be used and the items to be included" in calculating the reasonable cost of providing Medicare services. The way in which an institution computes depreciation as an element of its costs clearly is an appropriate subject for regulations adopted pursuant to this statutory authority.
 
 
 21
 The hospital here contends that the recapture of its depreciation is not a "suitable retroactive corrective adjustment" and thus prohibited by 42 U.S.C. § 1395x(v)(1)(A)(ii). This provision of the statute states that regulations governing costs shall:provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive.
 
 
 22
 Hazelwood argues that this limits the Secretary's rulemaking power to corrective adjustments that are retroactive for one fiscal year, but no longer; therefore, it argues, none of its pre-1970 depreciation is subject to recapture. This is untenable.
 
 
 23
 First, this statute commands the Secretary to make retroactive adjustments in certain cases, but it does not declare that the Secretary is limited to that power. Second, we do not accept an interpretation of the statutory term "any fiscal period" as a limitation on the time in which the Secretary may initiate an adjustment. The term seems more logically to define the time span over which an inadequate or excessive reimbursement may be deemed to have occurred. Thus we conclude that 20 C.F.R. § 405.415(d)(3), as applied to Hazelwood Hospital, was within the Secretary's statutory authority.
 
 IV. CONSTITUTIONALITY
 
 24
 The district court held that it was a violation of the due process clause for the Secretary to apply 20 C.F.R. § 405.415(d)(3) to recapture any depreciation charges allowed prior to the calendar year in which the regulation was promulgated. We disagree.
 
 
 25
 The due process clause does not make unconstitutional every law with retroactive effect. Almost all new laws upset some expectations, and frequently changes are made in the legal consequence of prior conduct. Only when such retroactive effects are so wholly unexpected and disruptive that harsh and oppressive consequences follow is the constitutional limitation exceeded. See, e. g., Welch v. Henry, 305 U.S. 134, 146-51, 59 S.Ct. 121, 83 L.Ed. 87 (1938).
 
 
 26
 The retroactive effects of the instant regulation were limited and reasonable. Its operation was triggered by a subsequent act: withdrawal from the Medicare program. If Hazelwood Hospital had remained in the program there would have been no recapture of the accelerated depreciation. Indeed, the regulation was given further prospectivity by its grandfather clause, allowing providers who had previously used the accelerated depreciation method to continue doing so, as long as they remained in the program. The regulation, moreover, was not made effective until nearly six months after promulgation. Hazelwood made no attempt to leave the program during this time, when it might have avoided the recapture provision.[8]
 
 
 27
 We view the regulation in this case as particularly reasonable since it is part of the ongoing adjustment necessary in a program of distributing federal subsidies. Here the Government is not directly regulating a purely private activity. Hazelwood Hospital voluntarily entered, and indeed re-entered, this program as a provider of services in return for reimbursement from the Government. Under the statute, it was entitled to be paid for its "reasonable costs," an admittedly imprecise concept, in an amount to be determined under regulations promulgated by the Secretary. The regulation here in question was a valid exercise of the Secretary's authority under the statute. "Those who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end." FHA v. The Darlington, Inc., 358 U.S. 84, 91, 79 S.Ct. 141, 146, 3 L.Ed.2d 132 (1958).
 
 
 28
 Accordingly, we reverse the judgment of the district court and remand for entry of judgment in favor of the defendant Secretary.
 
 
 29
 FERGUSON, District Judge (concurring and dissenting):
 
 
 30
 I concur in the result reached by the majority on the jurisdictional issue, but must dissent from its decision on the merits.
 
 
 31
 42 U.S.C. § 1395g requires the Secretary to "periodically determine" the "amount which should be paid" to a provider of services. Pursuant to that requirement, the Secretary issued a regulation providing that "final settlement" would be "at the end of the accounting period." 20 C.F.R. § 405.405(c) (emphasis added).
 
 
 32
 After an exhaustive analysis of the statutory scheme emphasizing the above cited provisions, the court in Mount Sinai Hospital of Greater Miami, Inc. v. Weinberger, 376 F.Supp. 1099, 1129 (S.D.Fla.1974) concluded that the retroactive cost adjustment procedure authorized by 42 U.S.C. § 1395x(v)(1) is "limited by its terms to 'any fiscal period,' " and that the Secretary in his regulations has limited retroactivity to the " 'end of the accounting period.' " Id. Although the fifth circuit did not accept other portions of the district court's opinion, it specifically approved its analysis regarding retroactive cost adjustments: "The District Court's opinion on (the procedure with respect to cost determinations) correctly analyzes the statutory scheme. . . . Congress chose to pay providers only the 'reasonable cost' of services, to be determined at the end of each fiscal year." Mount Sinai Hospital of Greater Miami, Inc. v. Weinberger, 517 F.2d 329, 335 (5th Cir. 1975), cert. denied, --- U.S. ----, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976). But see Kingsbrook Jewish Medical Center v. Richardson, 486 F.2d 663 (2d Cir. 1973).
 
 
 33
 Congress required the Secretary to determine the amount which should be paid, and he did. Congress did not countenance a procedure which would permit the Secretary at any time to reopen final determination as to cost. I would follow the analysis pursued in the fifth circuit and affirm the district court's decision.
 
 
 
 *
 Honorable Warren J. Ferguson, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 The Medicare program is administered in part by private companies which act as agents of the Secretary in auditing cost data of hospitals and other institutions, so as to determine the amount they are paid for Medicare services. 42 U.S.C. § 1395h. In this case, the defendant Blue Cross of Oregon acted as the Secretary's fiscal agent. There is no dispute that Blue Cross simply followed the Secretary's regulation; thus the action is really one against the Secretary, also named as a defendant. See 20 C.F.R. § 405.670 (1975); Peterson v. Weinberger, 508 F.2d 45, 51-52 (5th Cir.), cert. denied, 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 47 (1975)
 
 
 [2]
 The regulation provides as follows:
 When a provider who has used an accelerated method of depreciation with respect to any of its assets terminates participation in the program . . . the excess of reimbursable cost, determined by using accelerated depreciation methods and paid under the program over the reimbursable cost which would have been determined and paid under the program by using the straight-line method of depreciation will be recovered as an offset to current reimbursement due or, if the provider has terminated participation in the program, as an overpayment.
 
 
 [20]
 C.F.R. § 405.415(d)(3) (1975)
 
 
 [3]
 The Social Security Act Amendments of 1972 changed this pattern so that payments to providers are now reviewable by a Provider Reimbursement Review Board, and ultimately by the district courts. 42 U.S.C. § 1395oo (Supp. IV, 1974), as further amended, (U.S.C.A.Supp. Mar. 1976). This change was not effective for accounting periods ending before June 30, 1973, and thus is unavailable for Hazelwood's challenge
 
 
 [4]
 The question whether the APA generally confers jurisdiction for federal court review of agency decisions has not yet been answered by the Supreme Court, and the circuits remain divided. This question normally arises where federal question jurisdiction is unavailable because of the amount-in-controversy requirement. One view is that the judicial review provisions of the APA are remedial and, like the Declaratory Judgment Act, apply only when the court has otherwise obtained jurisdiction. See, e. g., Zimmerman v. United States, 422 F.2d 326, 330-31 & n.7 (3d Cir.), cert. denied, 399 U.S. 911, 90 S.Ct. 2200, 26 L.Ed.2d 565 (1970); 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3568 at 465-67 (1975). However, the increasingly prevalent view is that the APA embodies the presumption that agency action is normally subject to judicial review; thus it may be regarded as a basis for jurisdiction when other jurisdictional statutes are unavailable. See, e. g., Pickus v. United States Board of Parole, 165 U.S.App.D.C. 284, 507 F.2d 1107, 1109-10 & n.4 (1975), and cases cited therein; Byse & Fiocca, Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Judicial Review of Federal Administrative Action, 81 Harv.L.Rev. 308, 326-31 (1967). Our circuit has adopted the latter position. Wiren v. Eide, --- F.2d ----, No. 74-1169 (9th Cir. June 22, 1976) (slip opinion); Rothman v. Hospital Service, 510 F.2d 956, 958 (9th Cir. 1975); Brandt v. Hickel, 427 F.2d 53, 55 (9th Cir. 1970); Washington v. Udall, 417 F.2d 1310, 1319-20 (9th Cir. 1969) (semble ); Coleman v. United States, 363 F.2d 190, 193 (9th Cir. 1966), rev'd on other grounds, 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968)
 
 
 [5]
 At the time § 405(h) was originally enacted in 1935, this sentence referred to all of the general grants of jurisdiction then available to a district court. It has not been amended since, and thus does not include the more recent jurisdictional provisions of the federal mandamus statute, 28 U.S.C. § 1361, or the APA. One could suggest that § 405(h) should have the same effect now as when it was enacted and thus be extended to preclude review under these newer jurisdictional statutes. On the other hand, Congress has not amended § 405(h) in the same manner as 38 U.S.C. § 211(a), which now provides for certain decisions of the Veterans' Administrator that "no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise " (italicized language added in 1970)
 
 
 [6]
 Although the third sentence of § 405(h) does not mention the APA, the Salfi Court interpreted the first two sentences of that section as "prevent(ing) review of decisions of the Secretary save as provided in the Act." 422 U.S. at 757-58, 95 S.Ct. at 2463; see id. at 759 n.6, 95 S.Ct. 2457. This interpretation would seem to apply to the APA as much as to 28 U.S.C. § 1331. In Rothman we acknowledged that the second sentence of section 405(h) might be read to prevent judicial review of questions not specifically made reviewable under the Act. Instead, however, we viewed this sentence as simply preventing a claimant from bypassing the statutory procedures in those matters for which they were available. 510 F.2d at 958-59. Our interpretation of § 405(h) may be somewhat inconsistent with the above-cited language in Salfi, but not with the Court's holding. As we discuss infra, review under the Social Security Act was available to the plaintiffs dismissed in Salfi. 422 U.S. at 762-64, 95 S.Ct. 2457
 
 
 [7]
 Of course, it is not clear that the Court accepts the view that the APA can provide jurisdiction. See note 4 supra. Alternatively, the Court could view APA jurisdiction as available only in the "absence or inadequacy" of a special statutory review procedure. 5 U.S.C. § 703; see id. § 704. Thus the APA would not have been a potential basis for jurisdiction, since § 405(g) was available to the unnamed plaintiffs in Salfi. See 422 U.S. at 764, 95 S.Ct. 2457
 
 
 [8]
 It is true that the Secretary could have required as much as six months' notice before releasing Hazelwood from the program. 20 C.F.R. § 405.613 (1970). Thus Hazelwood might not have been successful had it tried to avoid the recapture regulation by withdrawing prior to the effective date. However, Hazelwood made no such attempt and has not shown that it would have been likely to fail in making such a withdrawal